# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JOHN B. KRUDOP,  )
  )
       Plaintiff,  )
  )
  ) Case No. CIV-18-312-KEW
  )
COMMISSIONER OF THE SOCIAL  )
SECURITY ADMINISTRATION,  )
  )
       Defendant.  )

## OPINION AND ORDER

Plaintiff John B. Krudop (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. § 404.1520.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. § 404.1521. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 61 years old at the time of the decision. He has a high school education and worked in the past as an exterminator. Claimant alleges an inability to work beginning on April 12, 2012, due to anxiety, post-traumatic stress disorder, and depression.

**Procedural History**

On October 28, 2016, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On April 4, 2018, the Administrative Law Judge("ALJ") Michael Mannes conducted a hearing in McAlester, Oklahoma, at which Claimant

3

appeared and testified. On April 20, 2018, the ALJ entered an unfavorable decision. The decision of the ALJ represents the Commissioner's final decision for purposes of further review. 20 C.F.R. § 404.984.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with certain non-exertional limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error (1) by failing to properly consider his VA disability rating; (2) by failing to properly apply the Medical-Vocational Guidelines; and (3) by failing to properly consider opinions from Claimant's treating psychologist.

**Consideration of Disability Rating**

In his decision, the ALJ found Claimant suffered from severe impairments of anxiety with PTSD and depression (Tr. 17). He determined Claimant could perform a full range of work at all exertional levels, with non-exertional limitations. In so doing, the ALJ found Claimant could perform simple, routine tasks, have occasional interaction with supervisors and coworkers, and have only incidental contact with the general public in the performance

4

of routine tasks.  Claimant could respond appropriately to changes in a routine work setting, and time off task could be accommodated by normal work breaks.  (Tr. 20).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant can perform the representative jobs of laundry worker I, dining room attendant, and hand packer, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 23-24).  As a result, the ALJ concluded that Claimant was not under a disability from April 12, 2012, his amended onset date, through March 31, 2015, the date last insured. (Tr. 24).

Claimant contends the ALJ improperly considered his VA disability rating.  Specifically, he asserts that although the ALJ assigned partial weight to the rating, his explanation for doing so was not supported by the evidence in the record.  The VA determined that Claimant's PTSD was 100% disabling on August 31, 2011, and that his tinnitus was 10% disabling, with 0% impairment to hearing.  (Tr. 156, 370).

"Although another agency's determination of disability is not binding on the Social Security Administration . . ., it is evidence that the ALJ must consider and explain why he did not find it persuasive."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005), citing *Baca v. Department of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993).  An ALJ must consider the VA rating

5

in his decision, but he is not bound by the rating. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).

The ALJ discussed Claimant's VA disability rating for PTSD and tinnitus in the decision. He noted Claimant was awarded 100% VA disability effective August 31, 2011, when he was found to have a "10% service-connected disability due to tinnitus, and 0% service-connected disability due to impaired hearing." Although Claimant was initially found to have a 70% service-connected disability for PTSD, it was increased to 100% on January 9, 2013. (Tr. 22, 156, 168-69). The ALJ noted that the VA disability rating was not binding, but he assigned partial weight to the rating, explaining that he found the limitation for tinnitus consistent with the audiological examination in the record, but he determined the degree of limitation for Claimant's PTSD was "inconsistent with the treating notes, mental status examination findings, and the claimant's reports and testimony as to what he could still do despite his allegedly disabling PTSD and other mental impairments." (Tr. 22).

With regard to Claimant's tinnitus, the ALJ considered the audiology report when he determined the tinnitus was a non-severe impairment. He determined that the condition caused no more than minimal limitation and did not limit Claimant's ability to perform work activities. (Tr. 18). The audiology report demonstrates that Claimant had suffered from service-related bilateral tinnitus "for

6

a long time." (Tr. 370-72). The ALJ considered this consistent with the VA disability rating of 10% disability for tinnitus but 0% disability for impaired hearing. (Tr. 22). The Court finds no error with regard to the ALJ's consideration of the VA disability rating as it pertains to Claimant's tinnitus.

However, as discussed herein, the ALJ failed to fully consider the findings and opinion of Claimant" treating psychologist Kenneth Dick, Ph.D., with regard to Claimant's PTSD. Once the ALJ has properly considered Dr. Dick's findings and opinions, he should on remand determine whether the 100% disability rating remains "inconsistent with the treating notes, mental status examination findings, and the claimant's reports and testimony as to what he could still do despite his allegedly disabling PTSD and other mental impairments." (Tr. 22).

**Consideration of Medical-Vocational Guidelines**

Claimant also contends the ALJ failed to properly apply the Medical-Vocational Guidelines (the "grids"). He asserts that if the ALJ had properly considered his physical impairments, he would have limited Claimant to sedentary or light work, which would have resulted in a finding of disability under the grids. Specifically, Claimant contends the ALJ ignored evidence of his complaints of hypertension, GERD, head and neck pain, impaired hearing, and tinnitus in the RFC assessment, as he determined they were non-severe impairments at step two.

7

The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See*, *e.g.*, *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed. Appx. 387, 392 (10th Cir. 2007) (the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000) (unpublished), 2000 WL 1028250, at *1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). The fact Claimant was diagnosed with a number of conditions does not translate into conditions that significantly limited Claimant's ability to work. The ALJ discussed the conditions but determined no functional restrictions arose from them. (Tr. 17-18).

The burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007), quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. Rul. 85-28, 1985 WL 56856. At step two, Claimant bears the burden of showing the existence of

an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

To the extent Claimant contends the ALJ failed to find his physical impairments were severe impairments at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of a claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as an ALJ, in determining a claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those

'not severe.'" *Id.*, quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291–292 (10th Cir. 2008).

In this case, the ALJ did not end the sequential evaluation at step two by finding Claimant had no severe impairments. Since the ALJ did not deny benefits at step two based upon the lack of any severe impairments, his failure to find Claimant's physical impairments were severe impairments at step two did not constitute reversible error. Moreover, he determined that the physical impairments considered singly or in combination did not significantly limit Claimant's ability to perform basic work activities. (Tr. 18). Based upon the limitations the ALJ included in the RFC and the testimony from the VE, he correctly applied the grids as a framework for determining that Claimant was not disabled. (Tr. 24).

**Evaluation of Opinion Evidence**

Claimant further argues the ALJ failed to properly consider the opinions of his treating psychologist Dr. Dick. Claimant received treatment from Dr. Dick in August of 2011, which continued through September of 2012. (Tr. 392-95).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). He must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a

medical opinion. *Id*. Moreover, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996), citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability").

The ALJ discussed Dr. Dick's treatment of Claimant in his decision. He referenced Dr. Dick's notation in letters dated September 16, 2011, and again on August 6, 2012, that "[C]laimant reported he was responding well to the slow pace of the small town atmosphere in his retirement days." (Tr. 19, 21). The ALJ also mentioned that Dr. Dick administered the Personality Assessment Inventory to Claimant and diagnosed him with PTSD. He noted Claimant's reports of disturbed sleep and a feeling of anxiety to Dr. Dick in July of 2012, and Dr. Dick's prescribing Claimant Trazadone and Klonopin. The ALJ further discussed Dr. Dick's treatment notes from September of 2012, wherein it was noted

11

Claimant felt better and his mood "was positive and his affect was mood congruent."  (Tr. 21).

Although the ALJ referenced portions of Dr. Dick's letters from September of 2011 and August of 2012, he did not discuss significant portions of the letters.  For example, as a result of the Personality Assessment Inventory, which was administered to establish a behavioral profile for Claimant's daily functioning, Dr. Dick stated:

> [Claimant's] psychological profile indicates a broad range of clinical features suggesting a multiple diagnosis.  He reports marked distress, moderate impairment in functioning especially with thinking and concentration problems accompanied by distress and dysphoria.  He feels estranged from the people around him.  He expresses little hope that his circumstances will improve in the future.  [Claimant] demonstrates unusual complaints of somatic impairment.  [Claimant's] self-description indicates significant suspiciousness and hostility in his relations with others.  He is likely to be a hypervigilant individual who often questions and doubts motives around him.  [Claimant] describes a number of problematic traits.  He reports problems of many different types.  He is likely to be quite emotionally labile, manifesting fairly rapid and extreme mood swings and in particular probably experiences episodes of poorly controlled anger.

(Tr. 396-97).  Dr. Dick concluded Claimant's symptoms were consistent with a diagnosis of PTSD.

The ALJ made no mention of these findings or opinions from Dr. Dick.  It was error for the ALJ to ignore this evidence.  *See Clifton*, 79 F.3d at 1010; *Hardman*, 362 F.3d at 681.  On remand,

the ALJ should fully discuss Dr. Dick's findings and opinions with regard to Claimant's PTSD.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED** and the case is **REMANDED** for further proceedings consistent with the Opinion and Order.

IT IS SO ORDERED this 27th day of March, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE